(enough, writing)

OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT THE PSPC POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

2. **PRODUCT CLAIMS AND LIMITATION ON LIABILITY**.

    A. Boston Scientific will examine the Boston Scientific Product promptly as possible after receipt of each shipment and notify PSPC of any off-specification Boston Scientific Product, shortfall in delivery, or non-receipt of Boston Scientific Product. PSPC will not be responsible for any variation in quality or quantity unless Boston Scientific gives PSPC written notice of a claim of such variation within 100 days after receipt of the shipment. Boston Scientific's failure to give notice of any claim will constitute an unqualified acceptance of the Boston Scientific Product and a waiver by Boston Scientific of all claims with respect thereto.

    B. PSPC'S TOTAL LIABILITY TO BOSTON SCIENTIFIC FOR ANY CLAIMS OF ANY NATURE (WHETHER OR NOT SAID CLAIMS ARE BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, INDEMNITY, CONTRIBUTION, OR OTHERWISE) WILL NOT EXCEED THE PURCHASE PRICE OF THE PORTION OF THE BOSTON SCIENTIFIC PRODUCT OR INDIRECT PRODUCT IN RESPECT OF WHICH SUCH CLAIMS ARE MADE. **IN NO EVENT WILL PSPC BE LIABLE FOR ANY LOST PROFITS OR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, CONTINGENT, EXEMPLARY OR PUNITIVE DAMAGES INCURRED BY BOSTON SCIENTIFIC.**

3. **INDEMNITY.**

    A. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS SECTION, BOSTON SCIENTIFIC HEREBY RELEASES, RELINQUISHES AND DISCHARGES AND AGREES TO DEFEND, INDEMNIFY AND HOLD PSPC, ITS PARENTS, SUBSIDIARIES, AFFILIATES, PARTNERS, CO-VENTURER, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS (INDIVIDUALLY "INDEMNITEE" AND COLLECTIVELY "INDEMNITEES"), FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, SUITS, LOSSES, LIABILITIES, JUDGMENTS, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, COURT COSTS AND REASONABLE ATTORNEY'S FEES) AND CAUSES OF ACTION OF WHATSOEVER KIND (COLLECTIVELY "CLAIMS"), INCLUDING, WITHOUT LIMITATION, CLAIMS FOR PERSONAL INJURY OR DEATH OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, INJURY OR DEATH TO BOSTON SCIENTIFIC'S EMPLOYEES) OR PROPERTY DAMAGE, ARISING OUT OF, CONNECTED WITH, OR RELATING IN ANY WAY TO (i) PAST, PRESENT OR FUTURE USE OF BOSTON SCIENTIFIC PRODUCT OR INDIRECT PRODUCT IN THE MANUFACTURE OF MEDICAL DEVICES (FOR PURPOSES OF THIS SECTION "MD PRODUCT") BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC; OR (ii) MEDICAL DEVICES WHICH HAVE BEEN, ARE, OR MAY BE MANUFACTURED BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC USING MD PRODUCT.

    B. THE PARTIES HEREBY EXPRESS THEIR INTENT THAT THE INDEMNITIES AND RELEASE CONTAINED IN THIS SECTION 3 BE LIBERALLY CONSTRUED.

    C. SUCH INDEMNITIES AND RELEASE SHALL APPLY WITHOUT REGARD TO WHETHER OR NOT THE (i) MD PRODUCT WAS PURCHASED BY BOSTON SCIENTIFIC OR A THIRD PARTY, INCLUDING, WITHOUT LIMITATION, SUBCONTRACTORS OR OEMS OF BOSTON SCIENTIFIC, FROM PSPC OR PSPC'S DISTRIBUTORS; OR (ii) THE MEDICAL DEVICES WERE MANUFACTURED BY BOSTON SCIENTIFIC OR A THIRD

CONFIDENTIAL
BSCM04700097587

PARTY, INCLUDING WITHOUT LIMITATION, SUBCONTRACTORS OR OEMS OF BOSTON SCIENTIFIC.

D. IN ADDITION, SUCH INDEMNITIES AND RELEASE SHALL APPLY WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, WITHOUT LIMITATION, STRICT LIABILITY, BREACH OF WARRANTY, IMPERFECTION OF PRODUCT, OR THE NEGLIGENCE OF AN INDEMNITEE, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE; PROVIDED, HOWEVER, THAT SAID INDEMNITIES AND RELEASE SHALL NOT APPLY (i) TO THE EXTENT SUCH CLAIMS ARE THE RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF AN INDEMNITEE; OR (ii) WITH RESPECT TO BOSTON SCIENTIFIC PRODUCT *ONLY*, TO THE EXTENT SUCH CLAIMS ARE THE RESULT OF A BREACH OF WARRANTY SET FORTH IN SECTION 1.A.

4. **CHANGE IN SPECIFICATIONS.**

The parties acknowledge that PSPC may (a) modify Boston Scientific Product or Indirect Product at any time it deems appropriate; provided, however, that PSPC shall notify Boston Scientific in writing prior to the implementation of any change(s) to Boston Scientific Product specifications *only*, as set forth in Attachment B. Said notice shall describe the change(s) in question to the Boston Scientific Product specifications and provide the implementation date of said changes ("Notice of Intended Change"). Within 30 days of receipt of the Notice of Intended Change, Boston Scientific may place an order, which order shall be accepted by PSPC on pricing terms agreed by the parties, for a transition quantity (not to exceed 40,000 pounds unless otherwise agreed by PSPC) of Boston Scientific Product meeting the specifications contained in Attachment B.

5. **MISCELLANEOUS.**

A. This Agreement supersedes all prior understandings, drafts, discussions, or statements, whether oral or in writing, express or implied, dealing with the same subject matter. It constitutes a final written expression of all the terms of this agreement and is a complete and exclusive statement of those terms. It may not be amended or modified in any manner except by a written agreement signed by both parties that expressly amends this Agreement.

B. ANY QUESTIONS CONCERNING THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT WILL BE GOVERNED BY THE DOMESTIC LAW OF THE STATE OF TEXAS, WITHOUT REGARD TO THE PRINCIPLES OF THE CONFLICTS OF LAWS.

C. Boston Scientific and PSPC acknowledge that from time to time purchase orders, bills of lading, delivery instructions, invoices and similar documentation will be transmitted and exchanged to facilitate the sale of Product. In the event of conflict between the provision of this Agreement and the provisions contained in any purchase order, bill of lading, delivery instruction, invoice or similar document, the provisions of this Agreement shall control.

D. This Agreement will be effective as of October 1, 2004 and will continue thereafter through September 30, 2005 unless otherwise terminated by PSPC at any time by giving Boston Scientific at least 90 days prior notice; provided, however, that the provisions of this Agreement (including, without limitation, Sections 2, 3 and Paragraph E. of this Section) which by their sense and context, are intended to survive termination or expiration of this Agreement, shall survive and continue in effect after said termination or expiration. At least 60 days prior to the effective date of termination of

CONFIDENTIAL
BSCM04700097588

this Agreement, Boston Scientific may place an order for Boston Scientific Product (not to exceed 40,000 pounds per grade), which order shall be accepted by PSCP on pricing terms agreed by the parties.

   E. Boston Scientific represents and warrants that upon expiration or termination of this Agreement, the use of PSPC Polypropylene Product will be discontinued in the manufacture of Medical Devices by, for or on behalf of Boston Scientific, except to the extent any quantity of Boston Scientific Product or Indirect Product remains in the inventory of Boston Scientific or certain third parties (as more particularly described in the second "Whereas" Clause of the Recitals on Page 1) as of the effective date of expiration or termination of this Agreement, in which event said inventory may be used for its intended application(s) after expiration or termination of the Agreement.

   F. Boston Scientific represents and warrants that it has authority to execute this Agreement for and on behalf of its subsidiaries.

   G. Except as expressly provided in Section 4 and 5.D., nothing contained in this Agreement shall obligate (i) PSPC to sell PSPC Polypropylene Product to Boston Scientific or any third party, including, without limitation, PSPC's distributors, or (ii) PSPC's distributors to sell PSPC Polypropylene Product to Boston Scientific or any third party.

   H. This Agreement and its terms will be treated as confidential by each party and will not be disclosed to any third party except to the extent disclosure is necessary for the performance of the Agreement or as required by law.

   I. The parties acknowledge and agree that the recitals provided above on page 1 of this Agreement constitute an integral part of this Agreement and will be given the same force and effect as any other provision in this Agreement.

**None of the parties shall be legally bound by anything contained in this Contract, or any negotiations pursuant thereto, unless and until the companies have agreed to all terms and this Contract has been signed by authorized officers of each company.**

**Phillips Sumika Polypropylene Company**

BY: *[signature]*
TITLE: General Manager
DATE: May 10, 2005

**Boston Scientific Corporation for and on behalf of itself and its subsidiaries**

BY: *[signature]*
  Ann M. Charest
TITLE: Sourcing Director
DATE: March 28, 2005

CONFIDENTIAL
BSCM04700097589

ATTACHMENT A

HGX-030-01

CONFIDENTIAL
BSCM04700097590

ATTACHMENT B

| Test | Test Method ASTM/ISO | Units of Measure | Tolerance | |
|---|---|---|---|---|
| | | | Min | Max |
| **Melt Flow Rate** | ASTM D 1238 (Condition 230-2.16) | g/10 min | 3.3 | 4.3 |

CONFIDENTIAL
BSCM04700097591