**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE: BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

MDL No. 2326

--------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

    *Hanna Wilkerson v. Boston Scientific Corp.*    No. 2:13-cv-04505

**MEMORANDUM OPINION AND ORDER**
**(*Defendant's Motion for Partial Summary Judgment*)**

Pending before the court is defendant Boston Scientific Corporation's ("BSC") Motion for Partial Summary Judgment on Plaintiff Hanna Wilkerson's Punitive Damages Claim [Docket 29]. For the reasons set forth below, the defendant's Motion for Partial Summary Judgment [Docket 29] is **DENIED**.

    **I.**    **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the BSC MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate

district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Wilkerson's case was selected as a Wave 1 case by the defendant.

Plaintiff Hanna Wilkerson was surgically implanted with the Advantage Fit System (the "Advantage") on March 9, 2010. (BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 30], at 2). She received the surgery at a hospital in Concord, North Carolina. (*Id.*). Ms. Wilkerson claims that as a result of implantation of the Advantage, she has experienced various injuries. (Pl.'s Resp. in Opp'n to BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Resp. Mem. in Supp.") [Docket 54], at 1). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Short Form Compl. [Docket 1], at 4–5). In the instant motion, BSC moves for partial summary judgment on the grounds that Ms. Wilkerson's "claim for punitive damages is . . . without evidentiary or legal support." (Mem. in Supp. [Docket 29], at 1).

II. **Legal Standards**

   a. **Partial Summary Judgment**

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration

of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor," *Anderson*, 477 U.S. at 256, that is, more than a mere "scintilla of evidence" in support of his or her position, *id.* at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

b. **Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods.*

*Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as Ms. Wilkerson did in this case, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Wilkerson received the implantation surgery in North Carolina. Thus, the choice-of-law principles of North Carolina guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of North Carolina law. North Carolina generally applies the *lex loci delicti* approach, which provides that "the state where the injury occurred is considered the situs of the claim." *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722–23 (N.C. App. 2010). Here, the alleged injury occurred in North Carolina, where Ms. Wilkerson was implanted with the allegedly defective device. Thus, I apply North Carolina's substantive law—including North Carolina's punitive damages law—to this case.

**III.     Analysis**

Under North Carolina law, "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages *and* that one of the following aggravating factors was present and was related to the injury . . . . : (1) [f]raud; (2) [m]alice; [or] [w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15 (emphasis added). Critically, the claimant must prove the existence of an aggravating factor—including its connection to the injury—by clear and convincing evidence. *Id.*; *see also Schneck v. HNA Holdings, Inc.*, 613 S.E.2d 503, 508 (N.C. App. 2008) (holding that the plaintiffs did not present clear and convincing evidence of the connection between the alleged wrongful act and plaintiffs' alleged harm).

Here, Ms. Wilkerson argues that she has proffered sufficient evidence demonstrating that BSC's conduct was willful or wanton. (Resp. Mem. in Supp. [Docket 55]). Accordingly, I do not discuss whether BSC's conduct constituted fraud or malice. For conduct to be willful or wanton, it must create a "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. § 1D-5(7). Additionally, willful or wanton conduct must be more than gross negligence. *Id.*

BSC argues that, with regard to any claim of willful or wanton conduct, plaintiff "has done no more than rehash the allegations of her other tort claims." (Mem. in Supp. [Docket 29], at 14). In support of its argument that such evidence is insufficient for a reasonable juror to award punitive damages, BSC argues that, under North Carolina law, "there must be some additional element of asocial behavior [that] goes beyond the facts necessary to create a simple case of tort." (*Id.* (citing *Shugar v. Guill*, 277 S.E.2d 126, 130 (N.C. Ct. App. 1981)). BSC further argues that punitive damages against a corporation are permissible only if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise

5

to punitive damages." (*Id.* (quoting N.C. Gen. Stat. § 1D-15(c))). Ms. Wilkerson, on the other hand, relies on my decision in *Sanchez v. Boston Scientific Corp.*, 38 F. Supp. 3d 727, 742 (S.D. W. Va. 2014), and argues that "[a] reasonable jury could find that by ignoring a warning on the MSDS and failing to conduct clinical testing, BSC's actions were 'despicable conduct' with willful and conscious disregard of the safety of consumers." (Resp. Mem. in Supp. [Docket 55], at 11). Although *Sanchez* did not concern North Carolina law, its reasoning applies with equal force here.

As in *Sanchez*, the MSDS at issue here warned BSC not to implant the material into the human body. (MSDS issued by Chevron Phillips Chem. Co. for Marlex Polypropylenes (All Grades) (Oct. 9, 2007) [Docket 55-3], at 1). Specifically, the warning provided:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

*Id.* Despite this warning, BSC used the Chevron Phillips polypropylene in the Advantage device. (*See* Biocompatibility Assessment Form for Polypropylene 6 mil Fiber Supplier Change for Sling Device Mesh [Docket 55-34], at 690 (listing the Advantage as a device using 6 mil polypropylene fibers)).

Additionally, Ms. Wilkerson references the written agreement between BSC and its polypropylene supplier, which cautioned BSC to make its own determination of the safety and suitability of the polypropylene material in its products. (Resp. Mem. in Supp. [Docket 55], at 10). The agreement provided:

> BEFORE USING ANY PSPC POLYPROPYLENE PRODUCT, BOSTON SCIENTIFIC IS ADVISED AND CAUTIONED TO MAKE ITS OWN DETERMINATION AND ASSESSMENT OF THE PSPC POLYPROPYLENE PRODUCT FOR USE BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT THE PSPC POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

(Agreement between BSC and Chevron Phillips Chem. Co. [Docket 55-6]). Despite this agreement, evidence suggests that BSC performed no clinical testing on the Advantage prior to releasing the product to the public. (*See* Gardner Dep. [Docket 55-1], at 374:17–23 ("We didn't do any clinical studies."); Expert Report of Dr. Jerry Blaivas [Docket 55-10], at 10 ("As previously mentioned, Boston Scientific conducted no clinical testing on the Advantage, Advantage Fit and Lynx."); *see also* Rao Dep. [Docket 55-5], at 166:15–21 ("We have done clinical studies on some of our products, but I don't know which ones.")).[1]

In light of this evidence, I **FIND** that there is a genuine dispute of material fact with regard to the existence of an aggravating factor under North Carolina General Statute § 1D-15. Under a clear and convincing standard, a reasonable juror could find that by ignoring a warning on the MSDS and neglecting to conduct clinical studies, BSC's actions were taken with a "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. §§ 1D-5(7), 1D-15. Accordingly, BSC's motion for summary judgment on the issue of punitive damages is **DENIED**.

**IV.    Conclusion**

For the reasons set forth above, the defendant's Motion for Partial Summary Judgment [Docket 29] is **DENIED.**

---

[1] BSC argues in its Reply that North Carolina does not permit punitive damages on the basis of vicarious liability. (BSC's Reply in Supp. of Mot. for Summ. J. & Mem. of Law in Supp. ("Reply") [Docket 62], at 1). Ms. Wilkerson, however, does not argue that BSC is liable through the acts of any particular employee. Rather, Ms. Wilkerson argues that BSC is liable for actions taken in its corporate capacity. (Resp. Mem. in Supp. [Docket 55], at 16).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 17, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE